# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SMITH BROTHERS TRUCKING )<br>OF MT. AIRY, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BAKER TRUCK )<br>BROKERAGE, INC., )<br>doing business as BAKER )<br>TRANSPORTATION SERVICES, )<br>)<br>Defendant. ) | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br>1:07-CV-623 |

This matter is before the court on a motion for summary judgment by Defendant Baker Truck Brokerage, Inc. ("BTB") (docket no. 25). Plaintiff Smith Brothers Trucking of Mt. Airy, Inc. ("Smith Brothers") has responded in opposition to the motion, and the matter is ripe for disposition. Because the parties have not consented to the jurisdiction of the magistrate judge, the motion must be addressed by way of recommendation. For the following reasons, it will be recommended that BTB's motion for summary judgment be granted.

## BACKGROUND

This case arises from a contract between Smith Brothers and BTB for freight shipments. Smith Brothers is a corporation organized under the laws of the State of North Carolina with its office and principal place of business in Surry County, North Carolina. BTB is a corporation organized and existing under the laws of the

State of California with its office and principal place of business in Monterey County, California. Smith Brothers seeks recovery for unpaid invoices and improper credits taken by BTB. More specifically, the Amended Complaint (docket no. 18) alleges one cause of action for breach of contract.[1]

**STATEMENT OF THE CASE**

Smith Brothers is a licensed motor carrier. BTB is a broker of freight shipments in interstate commerce through authorized and licensed motor carriers. In general, BTB would contract with a given motor carrier for the transport of a given shipment of freight between designated points. In return, the motor carrier would be paid an agreed-upon sum by BTB upon the presentation of certain required documents, including an executed bill of lading.

Over an extended period of time,[2] Smith Brothers entered into a series of similar contracts with BTB. Under the terms of the contracts, Smith Brothers agreed to transport in interstate commerce shipments of freight; in return, Smith Brothers would be paid by BTB under the contract terms and conditions. Smith Brothers claims that despite demands for payments, BTB has failed and refused to pay Smith Brothers for the transportation of freight as agreed upon in the series of contracts.

---

[1] The action is in this court based on diversity jurisdiction.

[2] While not a critical fact, BTB suggests that this "extended period of time" was twenty-four years.

Smith Brothers alleges the amount unpaid and due under the contracts to be in excess of $75,000.00.

BTB contends that it is entitled to summary judgment because when Smith Brothers produced the list of unpaid invoices, the majority of the invoices had, in fact, been paid. Of the few remaining invoices, BTB contends that they do not need to be paid because: (1) Smith Brothers did not send the invoice to BTB, (2) Smith Brothers did not attempt to collect on the invoice prior to this litigation, and/or (3) collection is barred by the statute of limitations. As far as damages due for alleged improper credits, BTB contends either that (1) the evidence shows the credits were actually proper, (2) or Smith Brothers is unable to produce any evidence that the credits were improper, or (3) the statute of limitations bars recovery for improper credits.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**FACTS**

On January 21, 2008, Smith Brothers provided BTB with a spreadsheet showing approximately sixty-eight invoices that totaled $309,000.00 that had not been paid and thirteen invoices identified as "outstanding but not invoiced" totaling $56,220.00. (Linda Smith Dep. 208:22–210:14; Dep. Ex. 13.) On February 20, 2008, BTB provided cancelled checks and check stubs showing that the majority of invoices on the spreadsheet were either paid or were within current terms. (Linda Smith Dep. 222:14–224:24.)

On May 14, 2008, Smith Brothers produced a new spreadsheet that identified only thirteen allegedly unpaid invoices. (Payne Dep. 9:1–10:13; Dep. Ex. 21.) Of

these thirteen invoices, by Smith Brothers' own admission, four had never been sent to BTB (Payne Dep. 23:7–35:8; Dep. Ex. 21, 28, 29, 30, 31); one invoice had just been sent on April 7, 2008 (Payne Dep. 35:11–19; Dep. Ex. 21, 32); one invoice was not related to a load brokered by BTB (Payne Dep. 40:17–41:14; Dep. Ex. 21); one invoice had been paid (Payne Dep. 20:20–21:2; Dep. Ex. 21, 27); three invoices were over three years old,[3] Smith Brothers had made no recognizable effort to collect the amounts due, and no evidence was provided that the invoices had been sent (Payne Dep. 13:1–15:11, 17:7–18:11, 43:13–45:13; Dep. Ex. 21, 22, 24, 25); and, as to three other invoices,[4] Smith Brothers could not provide evidence that an invoice had been sent or that any effort had been made to collect the alleged amount due (Payne Dep. 18:18–20:7, 36:4–37:20; Dep. Ex. 21, 25, 26, 33). In addition, Smith Brothers contends that BTB has unilaterally and without justification taken improper credits for which Smith Brothers is owed money. For the following reasons, I find that BTB has shown that it is entitled to summary judgment because, of the 13 disputed invoices, the undisputed facts show that (1) as to some of the invoices, payment is now barred by the eighteen-month statute of limitations; (2)

---

[3] Both parties at this time were under the mistaken impression that the appropriate statute of limitations was three years as governed by North Carolina General Statute section 1-52 instead of the appropriate eighteen-month statute of limitations as provided by the ICC Termination Act of 1995, 49 U.S.C. § 14705(a). The difference between the two statutes of limitations does not affect the final decision as the federal statute increases the number of invoices falling within this category.

[4] These three invoices totaled $13,578.00.

Smith Brothers has not yet attempted to collect payment on some of the invoices, and BTB is therefore not yet obligated to pay for work done under these invoices; (3) at least one invoice was for work brokered by a third party and not Smith Brothers; and (4) BTB has paid the amount owed on one of the disputed invoices. In regards to the improper credits, the only evidence presented demonstrates that all disputed credits have already been settled.

**DISCUSSION**

Before addressing the parties' contentions regarding Plaintiff's breach of contract claim, I must determine which state's substantive law applies. As a federal court sitting in diversity, this court must apply the substantive law of North Carolina's highest court, the North Carolina Supreme Court, and this includes its choice-of-law rules. *Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002); *Insteel Indus., Inc. v. Costanza Contracting Co.*, 276 F. Supp. 2d 479, 483 (E.D. Va. 2003). Under North Carolina's choice-of-law rules for claims sounding in contract, North Carolina adopts the rule of *lex loci contractus*, which focuses on the state where the contract was formed. See *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). Here, both parties assume that the substantive law of North Carolina law applies, and it is reasonable to assume that the contracts were indeed entered into in North Carolina. Therefore, the court will apply the substantive law of North Carolina.

-6-

Case 1:07-cv-00623-TDS-WWD   Document 36   Filed 10/21/08   Page 6 of 13

The elements of a claim for breach of contract are the existence of a valid contract and a breach of the terms of that contract. See *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 369, 618 S.E.2d 867, 870 (2005). The intentions of the parties may be discerned from both their writings and their actions. *Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 522, 613 S.E.2d 274, 278 (2005). In North Carolina, if an action is brought for breach of contract for the payment of money, payment is an affirmative defense, and it is well settled that the defense of payment must be established by the party pleading it as a defense. *Lett v. Markham*, 266 N.C. 318, 319–20, 145 S.E.2d 907, 908 (1966); *Iredell County v. Gray*, 265 N.C. 542, 544, 144 S.E.2d 600, 601 (1965).

I. UNPAID INVOICES

A. Statute of Limitations for Invoices

While North Carolina's substantive law applies to claims sounding in contract, the proper statute of limitations for a motor carrier is governed by federal law. The ICC Termination Act of 1995 (the "Act") provides an eighteen-month statute of limitations even when claims are brought under state law. See 49 U.S.C. § 14705(a); *Emmert Indus. Corp. v. Artisan Assocs., Inc.*, 497 F.3d 982, 989–90 (9th Cir. 2007); *Arctic Express, Inc. v. Del Monte Fresh Produce NA, Inc.*, 366 B.R. 786, 792–93 (S.D. Ohio 2007); *Exel Transp. Servs., Inc. v. Sigma Vita, Inc.*, 288 Ga. App. 527, 530–31, 654 S.E.2d 665, 668–69 (2007). In a claim concerning a motor carrier falling under the Act, the statute of limitations begins to run on the date that the

carrier delivered or tendered delivery of the goods. *Emmert*, 497 F.3d at 989; *Baker v. Chamberlain Mfg. Corp.*, 356 F. Supp. 1314, 1317 (D.C. Ill. 1973).

On six of the thirteen invoices, the delivery dates fall beyond the eighteen-month statute of limitations and are thus barred from recovery.[5] Smith Brothers contends, however, that these invoices are not subject to the eighteen-month statute of limitations because Smith Brothers' and BTB's relationship was an "open account where parties intend that individual transactions are to be considered as a connected series rather than as independent of each other . . . ." (Pl.'s Memo. Opp'n to Summ. J. 13–14.) "Such an account is 'running' or 'current' where it continues with no time limitations fixed by express or implied agreement." *Whitley's Elec. Serv., Inc. v.*

---

[5] Since Smith Brothers filed an amended complaint, there is a question of whether the First Amended Complaint filed on February 6, 2008, relates back to the original Complaint filed on August 17, 2007. Applying the statute of limitations to the original Complaint precludes recovery for any claim arising before February 17, 2006; applying the statute to the First Amended Complaint precludes recovery for any claim arising before August 6, 2006. With the eighteen-month statute of limitations, the difference in filings only affects one invoice dated February 20, 2006. Since the original Complaint specifically alleged "beginning on or about February 1, 2006 and continuing through on or about May 15, 2007 . . . ," I find the Federal Rules of Civil Procedure 15(c) permits the First Amended Complaint to relate back to the original Complaint filed. BTB is not prejudiced by the amendment in that it had notice within the limitations period for this particular invoice, the policy behind the statute has been addressed, it permits the claim to be tried on the merits, and there is a factual nexus between the amendment and the amended claim. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 467–68 (4th Cir. 2007); *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983). Furthermore, despite that the amended complaint superseded the original complaint, see *infra* note 6, the filing date of the original complaint remains operative for relation-back purposes under Rule 15(c). *See FDIC v. Jackson*, 133 F.3d 694, 702 (9th Cir. 1998).
 Finally, I note that the invoice dated February 20, 2006, while not being barred from recovery by the statute of limitations, will be discussed *infra* with other invoices that Smith Brothers has not yet attempted to collect.

*Sherrod*, 293 N.C. 498, 503, 238 S.E.2d 607, 611 (1977). This type of account is characterized by a total balance being owed to the creditor and adjustments being made through the use of "debits and credits, and further dealings between the parties are contemplated." *Id.*

Smith Brothers has made no showing of such an account. While it is true that the parties engaged in a series of transactions, each transaction was evidenced by a distinct contract, whereby Smith Brothers hauled goods for BTB, submitted necessary documentation, and received payment for a specific contract(s). Payments from BTB specifically noted which invoices were being paid at that time by that payment. Any credits taken by BTB were also specifically noted. (Lee Smith Dep. 17:1–18:23.) In its amended complaint,[6] Smith Brothers did not allege an open account type relationship. Instead, the amended complaint sought payment for specific contracts allegedly not paid. For example, the amended complaint says that "Defendant Baker would contract with a given motor carrier for the transport of a given shipment of freight between designated point" and would be paid for that shipment. (Amended Compl., ¶ 6.) The amended complaint goes on to say that "Plaintiff entered into a series of contracts with Defendant Baker under the terms of

---

[6] An amended complaint supersedes the original pleading and the original pleading has no legal effect. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001); *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1476 (2d ed. 1990 & Supp. 1999) ("A pleading that has been amended . . . supercedes the pleading it modifies . . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .").

which it agreed to transport . . . freight in return [for payment] under the terms and conditions set forth in such series of contracts." (*Id.* at ¶ 7.) Last of all, the amended complaint says that Plaintiff performed as it should "under each and every contract . . . ." (*Id.* at ¶ 8.) Therefore, based on Plaintiff's own allegations, an open account did not exist between the parties, and the eighteen-month statute of limitations applies.[7]

In sum, for the reasons stated above, the delivery dates on six of the thirteen invoices fall beyond the eighteen-month statute of limitations and are thus barred from recovery.

B. Invoices Smith Brothers Never Sent

As to the seven remaining invoices in dispute, Smith Brothers admits that either it never sent an invoice to BTB or has no evidence that an invoice was sent to BTB for these remaining invoices. BTB contends that since it has not yet received

---

[7] Even assuming *arguendo* that an open account existed, BTB would have been required to acknowledge in writing its obligation to Smith Brothers on this account in order to toll the statute of limitations. *See* N.C. GEN. STAT. § 1-26; *Whitley's Elec. Serv.*, 293 N.C. at 505, 238 S.E.2d at 612. A partial payment only tolls the statute "if made under such circumstances as will warrant the clear inference that the debtor in making the payment recognized his debt as then existing and acknowledged his willingness, or at least his obligation, to pay the balance." *Id.* Smith Brothers has provided no evidence that BTB has acknowledged this obligation in writing, BTB has contended all along that these invoices have been paid, and the only evidence produced indicates that these invoices were paid. (Lee Smith Dep. 27:15–28:21.) BTB's method of payment by attributing amounts to specific invoices neither recognizes an account debt nor a willingness to pay the balance. Therefore, even if an open account could be found, the statute of limitations would still bar this claim.

these invoices, it is not in breach of the contract for failure to pay on the amount allegedly owed under these invoices. For the following reasons, I agree.

The parties to a contract may "agree to any condition precedent, the performance of which is mandatory before they become bound by the contract." *Cox v. Funk*, 42 N.C. App. 32, 34–35, 255 S.E.2d 600, 601 (1979). When a condition precedent exists in a contract, this condition must occur "before there is a breach of contract duty, before the usual judicial remedies are available." *Id.* at 34, 255 S.E.2d at 601 (citations omitted). Here, according to Smith Brothers' own assertions, the series of contracts between the parties in simple terms required Smith Brothers to haul freight and send "certain required documents" to BTB. (Pl's Memo. Opp'n to Summ. J. 1–2.) Only upon receipt of these required documents, "including an executed bill of lading," would BTB pay Smith Brothers for work completed. (*Id.*) Therefore, until Smith Brothers provides invoices and required documents to BTB as required by their contract, Smith Brothers has not produced any evidence of breach of contract by BTB for unpaid invoices that have not been sent to BTB.[8]

---

[8] That is, it is true that BTB continues to have an obligation to pay for work completed by Smith Brothers provided that Smith Brothers provides the required documentation. Indeed, BTB has continued to pay invoices that Smith Brothers has sent, including one that was recently sent on April 7, 2008, after this lawsuit was filed. The point is that until Smith Brothers provides BTB with the proper documentation for the remaining amount owed, BTB has no obligation to pay the alleged amount still owed.

-11-

## II. IMPROPER CREDITS

Finally, Smith Brothers has alleged that BTB unilaterally and improperly took credits toward amounts due upon completion of various contracts. As a preliminary matter, any credits falling outside the eighteen-month statute of limitations would be barred under the same rationale as discussed *supra*. As to the remaining credits, Smith Brothers has simply failed to present evidence to raise a genuine issue of fact as to whether the credits were improperly taken.

In a deposition, Lee Smith, who was the director and president of Smith Brothers Trucking when the alleged improper credits were taken, explained that customers make claims when they receive damaged freight. (Lee Smith Dep. 18:2–7.) This damage would be investigated to determine if it was the shipper's fault or the trucker's fault. (*Id.* 18:9–14.) If the blame fell upon the trucker, the customer would deduct the appropriate amount from the freight charges. (*Id.* 18:15–18.) This was commonly known as a claim. (*Id.* 18:19–23.)

Credits would then be taken for these claims by a brokerage firm against the freight hauler's payment. (*Id.* 18:2–7.) This was common in the industry and BTB did apply credits to Smith Brothers' payments. (*Id.*; Mary Payne Dep. 83:8–21.) Lee Smith, however, stated that whenever a question arose concerning a questionable credit, he would personally call BTB and was provided satisfactory information for the basis of the credit. (Lee Smith Dep. 25:8–17.) Mary Payne, Smith Brothers' bookkeeper, agreed that this method of handling a credit, whereby

Lee Smith would call BTB concerning a credit, was consistent with Smith Brothers' method of business. (Mary Payne Dep. 57:10–23.)

Mary Payne, after reviewing all the documentation that Smith Brothers possessed, admitted that Smith Brothers had incorrectly listed items as improper credits that did not belong on the list provided to BTB and she was not sure how many other items should not be on the list of improper credits. (*Id.* 49:19--51:15.) In addition, Mary Payne could find no evidence that any credit was improper, but she did state that BTB would make notes concerning various credits on the invoices returned with a corresponding payment. (*Id.* 48:22–49:20; 55:15–16; 86:3–6.) Indeed, the current president of Smith Brothers has conceded that the credits taken are not "necessarily inappropriate." (Linda Smith Dep. 45:9–12.)

Accordingly, the only evidence produced by Smith Brothers concerning the credits was to the effect that the credits were either proper or settled in a mutually satisfying manner at the time the credit was taken. I therefore find that BTB was not in breach of contract for credits taken for damaged freight.

## CONCLUSION

For the reasons stated herein, **IT IS RECOMMENDED** that the court **GRANT** the motion for summary judgment brought by BTB (docket no. 25).

_____
WALLACE W. DIXON
United States Magistrate Judge

October 21, 2008